**LYNCH CARPENTER LLP**
Gerald D. Wells, III
(N.J. I.D. No. 040652001)
1760 Market Street
Suite 600
Philadelphia, PA 19103
(267) 609-6910
jerry@lcllp.com

Nicholas A. Colella
(*Pro Hac Vice* Motion forthcoming)
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
nickc@lcllp.com

*Attorney for Plaintiff and the proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIN MASTERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONMOUTH UNIVERSITY, INC.,<br><br>Defendant. | Case No. 3:26-cv-03233<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Erin Masterson ("Plaintiff") brings this Class Action Complaint on behalf of herself, and all others similarly situated, against Defendant Monmouth University, Inc. ("Defendant" or "Monmouth"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE CASE

1. Plaintiff brings this class action against Defendant Monmouth for its failure to properly secure and safeguard Plaintiff's and other similarly situated individuals ("Class Members") personally identifying information ("PII" or "Private Information"), including names, addresses, phone numbers, emergency contact information, insurance information, financial information, partners' and vendors' data, students' private and confidential information including grades, email correspondence, and university HR records, which could potentially include personal health information.

2. Monmouth University is a leading private institution that offers a comprehensive array of undergraduate and graduate degree programs and is located in West Long Beach, New Jersey.[1]

---

[1] *Mission Statement of Monmouth University*, Monmouth University, https://www.monmouth.edu/about/choose-monmouth/mission-statement/ (last visited March 26, 2026).

1

3.      Plaintiff and Class Members are current or former students and/or employees who were required to indirectly and/or directly provide Defendant with their Private Information. By collecting, storing, and maintaining Plaintiff's and Class Members' Private Information, Monmouth has a resulting duty to secure, maintain, protect, and safeguard the Private Information that it collects and stores against unauthorized access and disclosure through reasonable and adequate data security measures.

4.      Despite Monmouth's duty to safeguard the Private Information of Plaintiff and Class Members, their Private Information in Defendant's possession was compromised when the data extortion group, PEAR, gained access to Defendant's computer system and exfiltrated sensitive data stored therein in or about March 2026 (the "Data Breach").

5.      The Data Breach occurred as a result of Defendant's failure to adequately secure Plaintiff's and Class Members' PII from unauthorized access and exfiltration when PEAR infiltrated Defendant's inadequately protected network servers and accessed highly sensitive PII contained therein.

6.      As of yet, upon information and belief, Defendant has not informed its current and former students and/or employees of the Data Breach. Indeed, Plaintiff and Class Members were wholly unaware before posts about it began appearing on the Dark Web, including the publishing of their PII.

2

7. Monmouth maintained the PII of Plaintiff and Class Members in a negligent and/or reckless manner. In particular, the PII was maintained on Monmouth's computer system and network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

8. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

9. As a result, Plaintiff's and Class Members' PII was compromised by an unauthorized third party, PEAR. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe and are entitled to injunctive and other equitable relief.

10.     As a direct and proximate result of Defendant's failure to implement and follow basic security procedures, Plaintiff's and Class Members' Private Information is now in the hands of cybercriminals.

11.     Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, intrusion of their privacy, and similar forms of criminal mischief, risks which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

12.     Plaintiff, on behalf of herself and all others similarly situated, alleges claims for negligence, breach of implied contract, unjust enrichment and declaratory judgment arising from the Data Breach. Plaintiff seeks damages and injunctive relief, including the adoption reasonably sufficient practices to safeguard the Private Information in Defendant's custody to prevent incidents like the Data Breach from reoccurring in the future, and for Defendant to provide identity theft protective services to Plaintiff and Class Members for their lifetimes.

## PARTIES

13.     Plaintiff is an adult, who at all relevant times, was a resident and citizen of the state of New Jersey. Plaintiff is former student of Defendant and, upon information and belief, reasonably believes her Private Information was compromised during the Data Breach.

14.     Plaintiff has suffered actual injury from having her Private Information exposed and/or stolen as a result of the Data Breach, including: (a) required mitigation efforts, including researching the Data Breach and needing to monitor her financial statements to ensure her information is not used for identity theft and fraud; (b) damages to and diminution of the value of her Private Information, a form of intangible property that loses value when it falls into the hands of criminals; (c) loss of privacy; and (d) continuous imminent and impending injury raising from increased risk of financial identity theft and fraud.

15.     As a result of the Data Breach, and the sensitivity of the Private Information compromised, Plaintiff will continue to be at a substantial and certainly impending risk for fraud and identity theft, and their attendant damages, for years to come.

16.     Defendant Monmouth University, Inc. is a private university and New Jersey corporation with its principal place of business located at 400 Cedar Avenue, West Long Branch, New Jersey 07764.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest

and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendant.[2]

18.    This Court has general personal jurisdiction over Defendant because it is a New Jersey citizen, as it is incorporated under the laws of New Jersey and its principal offices are located in New Jersey.

19.    This Court also has specific personal jurisdiction over Defendant because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this District.

20.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Defendant resides in this District.

## FACTUAL BACKGROUND

21.    Defendant is a private institution that was founded in 1933. In 2024, Monmouth enrolled 3,710 undergraduate students and 1,057 graduate students.[3] Upon information and belief, Monmouth employs hundreds, if not thousands, of individuals.

---

[2] *See* 28 U.S.C. § 1332(c)(1) (stating that for purposes of CAFA jurisdiction, a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business).
[3] *Monmouth University*, US News, https://www.usnews.com/best-colleges/ monmouth-university-2616 (last visited March 26, 2026).

22.   Plaintiff and Class Members are current or former students and/or employees of Defendant.

23.   As a condition of becoming a student or employee of Defendant, Plaintiff and Class Members directly or indirectly entrusted Monmouth with their sensitive Private Information.

24.   Plaintiff and Class Members value the confidentiality of their Private Information and, accordingly, have taken reasonable steps to maintain the confidentiality of their Private Information.

25.   In entrusting their Private Information to Defendant, Plaintiff and Class Members reasonably expected that Defendant would safeguard their highly sensitive information.

26.   By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Monmouth assumed equitable and legal duties to safeguard Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

27.   Despite these duties, Monmouth failed to implement reasonable data security measures to protect Plaintiff's and Class Members' Private Information and ultimately allowed threat actors to access and exfiltrate Plaintiff's and Class Members' Private Information in Defendants' possession.

7

## THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE

28.     Monmouth understood that the Private Information it collects was highly sensitive and of significant value to those who would use it for wrongful purposes.

29.     Monmouth also knew that a breach of its computer systems, and exposure of the Private Information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

30.     These risks are not theoretical; in recent years, numerous high-profile breaches have occurred at business such as Equifax, Facebook, Yahoo, Marriott, Anthem, Comcast, and many others.

31.     Private Information has considerable value and constitutes an enticing and well-known target to hackers. Hackers can easily sell stolen data as there has been "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[4]

---

[4] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/

32.    As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identity theft, and medical and financial fraud.[5]

33.    The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individual, businesses, and government entities in the U.S. In 2021, there were 6,670 publicly disclosed data breaches, exposing 16.8 billion records. The United States specifically saw a 12% increase in the total number of data breaches as compared to 2023.[6]

34.    In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2024, 3.73 million people reported some form of identity theft and/or fraud.[7]

35.    The ramifications of Monmouth's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may

---

[5] *What To Know About Identity Theft*, FTC Consumer Advice (Sept. 2024), https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed March 26, 2026).
[6]    *Flashpoint 2025 Global Threat Intelligence Report*, Flashpoint, https://flashpoint.io/resources/report/flashpoint-2025-global-threat-intelligence-gtir/ (last visited March 26, 2026).
[7] *Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited March 26, 2026).

continue for years. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[8]

36. Even if stolen Private Information does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

37. The specific types of personal data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and other

---

[8] *Report to Congressional Requesters, Personal Information, June 2007*, U.S. Gov't Accountability Office, https://www.gao.gov/new.items/d07737.pdf (last accessed March 26, 2026).

Class Members especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

38.     Based on the value of Plaintiff's and Class Members' PII to cybercriminals, Monmouth knew, or should have known of, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its data security systems were breached. Monmouth failed, however, to take adequate cyber security measures to prevent the Data Breach from occurring.

**MONMOUTH BREACHED ITS DUTY TO PROTECT PLAINTIFF'S AND CLASS MEMBERS' PRIVATE INFORMATION**

39.     On or about March 26, 2026, an unauthorized third party, PEAR, posted on the dark web that it gained access to Defendant's computer system and successfully exfiltrated Private Information stored therein. The Private Information exfiltrated in the Data Breach includes names, addresses, phone numbers, emergency contact information, insurance information, financial information, partners' and vendors' data, students' private and confidential information including grades, email correspondence, and university HR records, which could potentially include personal health information.

40.     Defendant has yet to provide notice of the Data Breach to its current or former students and/or employees or formally announce that the Data Breach has occurred.

11

41.     On information and belief, the cyberattack was expressly designed to gain access to private and confidential data of specific individuals, including (among other things) the PII of Plaintiff and Class Members. The cybercriminals were successful in exfiltrating sensitive information from Defendant's computer systems.

42.     All in all, the cybercriminals responsible for the Data Breach allege to have exfiltrated over 16 terabytes of data from Defendant's systems.

43.     The Data Breach occurred as a direct result of Monmouth's failure to implement and follow basic security procedures to protect its current and former students' and/or employees' Private Information that it had collected and stored.

**MONMOUTH FAILED TO COMPLY WITH FTC GUIDELINES AND INDUSTRY BEST PRACTICES**

44.     Monmouth is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

45.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices.

According to the FTC, the need for data security should be factored into all business decision-making.[9]

46.    Among other guidance, the FTC recommends the following cybersecurity guidelines for businesses in order to protect sensitive information in their systems: [10]

a.    Identify all connections to the computers where sensitive information is stored;

b.    Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks;

c.    Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business;

d.    Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine;

e.    Pay particular attention to the security of their web applications - the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks;

---

[9] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[10] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed March 26, 2026).

f.   Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet;

g.   Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls -settings that determine which devices and traffic get through the firewall - to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically;

h.   Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day; and

i.   Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.

47.   The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[11]

---

[11] *Id.*

48.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49.     Monmouth failed to properly implement basic data security practices. Monmouth's failure to employ reasonable and appropriate measures to protect against unauthorized access to its current and former students' and/or employees' PII constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

50.     Similarly, the U.S. Government's National Institute of Standards and Technology ("NIST") provides a comprehensive cybersecurity framework that companies of any size can use to evaluate and improve their information security controls.[12]

51.     NIST publications include substantive recommendations and procedural guidance pertaining to a broad set of cybersecurity topics including risk assessments, risk management strategies, access controls, training, data security

---

[12] *See Framework for Improving Critical Infrastructure Cybersecurity*, National Institute of Standards & Technology (Apr. 16, 2018), App'x A, Table 2, available at https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf.

controls, network monitoring, breach detection, and incident response.[13] Upon information and belief, Defendant failed to adhere to the NIST guidance.

52.    Further, cybersecurity experts have identified Further, cybersecurity experts have identified various best practices that should be implemented by entities in the financial industry, including the following:

    i.      Regularly assessing risks and auditing cybersecurity;

    ii.     Establishing a cybersecurity policy;

    iii.    Appointing a data protection officer;

    iv.     Securing networks;

    v.      Verifying user identities;

    vi.     Establishing secure password management;

    vii.    Continuously monitor user activity; and

    viii.   Manage third-party risks.[14]

53.    Upon information and belief, Defendant's failure to protect the Private Information it was entrusted is a result of its failure to adopt reasonable safeguards as required by the FTC Guidelines, NIST guidance, and industry best practices.

---

[13] *Id.* at Table 2, 26-43.
[14] Yana Storchak, *12 Best Practices for Banking and Financial Cybersecurity Compliance*, Syteca (April 2, 2025), https://www.syteca.com/en/blog/banking-and-financial-cyber-security-compliance.

54.     Monmouth was at all times fully aware of its obligations to protect the PII of its current and former students and/or employees given the reams of PII that it had access to as a result of the nature of its business. Monmouth was also aware of the significant repercussions that would result from a failure to properly secure the Private Information it maintained.

**PLAINTIFF AND CLASS MEMBERS SUFFERED DAMAGES**

55.     The ramifications of Monmouth's failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

56.     Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives as a result of Defendant's conduct. Further, the value of Plaintiff's and Class Members' Private Information has been diminished by its exposure in the Data Breach.

57.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging

from $40 to $200, and bank details have a price range of $50 to $200.[15] "Fullz"

packages, which includes "extra information about the legitimate credit card owner

in case" the scammer's "bona fides are challenged when they attempt to use the

credit card" are also offered on the dark web.[16]

58.     Plaintiff and Class Members are at substantial increased risk of

suffering identity theft and fraud or misuse of their Private Information as a result of

the Data Breach. From a study, 28% of individuals affected by a data breach become

victims of identity fraud - this is a significant increase from a 2012 study that found

only 9.5% of those affected by a breach would be subject to identity fraud. Without

a data breach, the likelihood of identify fraud is only about 3%.[17]

59.     Further, Plaintiff and Class Members have incurred and will incur out

of pocket costs for protective measures, such as identity theft protection, credit

monitoring, credit report fees, credit freeze fees, and similar costs related to the Data

Breach.

60.     Besides the monetary damage sustained in the event of identity theft,

consumers may have to spend hours trying to resolve identity theft issues. For

---

[15] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor
(Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-
identity-theft-fraud-dark-web/.
[16] *Id.*
[17] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KnowBe4,
https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud
(last accessed March 26, 2026).

example, the FTC estimates that it takes consumers an average of 200 hours of work over approximately six months to recover from identity theft.[18]

61.    Plaintiff and Class Members are also at a continued risk because their information remains in Monmouth's systems, which the Data Breach showed are susceptible to compromise and attack and are subject to further attack so long as Monmouth fails to take necessary and appropriate security and training measures to protect the Private Information in its possession.

62.    Plaintiff and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their Private Information to strangers.

63.    As a result of Monmouth's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer injuries, including out of pocket expenses; loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable Private Information; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their Private Information being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their Private Information; and continued risk to Plaintiff's and the Class Members'

---

[18] Kathryn Parkman, *How to Report identity Theft*, ConsumerAffairs (Feb. 17, 2022), https://www.consumeraffairs.com/finance/how-to-report-identity-theft.html.

19

Private Information, which remains in the possession of Defendant and which is subject to further breaches so long as Monmouth fails to undertake appropriate and adequate measures to protect the Private Information entrusted to it.

64. The fact is that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and Plaintiff and Class Members have not been provided any compensation for the unauthorized release and disclosure of their PII.

## CLASS ALLEGATIONS

65. Plaintiff brings this class action on behalf of herself and all other individuals who are similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

66. Plaintiff seeks to represent a class of persons to be defined as follows:

> All individuals in the United States whose Private Information was compromised in the Data Breach (the "Class").

67. Excluded from the Class are Monmouth, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

68. This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when she moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

69. **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through Defendant's records, including but not limited to the files implicated in the Data Breach.

70. **Commonality:** This action involved questions of law and fact common to the Class. Such common questions include but are not limited to:

   a. Whether Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

   b. Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' Private Information, and breached its duties thereby;

   c. Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and

21

> d.    Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

71.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class were all current and former students and/or employees of Defendant, and each had their Private Information exposed and/or accessed by an unauthorized third-party.

72.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

73.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication,

economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

74.    **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages are common to Plaintiff and each member of the Class. If Defendant breached its duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

75.    **Injunctive Relief:** Defendant has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

76.    **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

77.     Plaintiff re-alleges the factual allegations set forth in paragraphs 1-76 as if fully set forth herein.

78.     Plaintiff and Class Members provided their Private Information to Defendant as a condition of becoming a student and/or employee of Defendant.

79.     Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in securing, safeguarding, storing, and protecting the PII collected from them from being compromised, lost, stolen, accessed and misused by unauthorized parties. This duty includes, among other things, designing, maintaining, overseeing, and testing Defendant's security systems to ensure that PII in Monmouth's possession was adequately secured and protected.

80.     Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

81.     Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

24

82.    Defendant owed a duty of care to Plaintiff and Class Members to provide reasonable security, consistent with industry standards, to ensure that its systems and networks adequately protected their Private Information.

83.    Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Monmouth with their Private Information as a condition of receiving resources was predicated on the understanding that Monmouth would take adequate security precautions to protect their PII.

84.    By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

85.    Plaintiff and members of the Class entrusted Defendant with their PII with the understanding that Monmouth would safeguard their information.

86.    Defendant's conduct also created a foreseeable risk of harm to Plaintiff and Class Members by failing to: (1) secure its systems and exercise adequate oversight of its data security protocols; (2) ensure compliance with industry standard data security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent the Data Breach.

25

87.   Defendant knew, or should have known of, the risks inherent in collecting and storing PII, the vulnerabilities of its systems, and the importance of adequate security. Defendant should have been aware of numerous, well-publicized data breaches in the months and years preceding the Data Breach.

88.   Defendant breached its common law duty to act with reasonable care in collecting and storing the Private Information of its current and former students and/or employees, which exists independently from any contractual obligations between the parties. Specifically, Defendant breached its common law, statutory, and other duties to Plaintiff and Class Members in numerous ways, including by:

   a.   failing to adopt reasonable data security measures, practices, and protocols;

   b.   failing to implement data security systems, practices, and protocols sufficient to protect Plaintiff's and Class Members' PII;

   c.   storing current and former Plaintiff's and Class Members' PII longer than reasonably necessary;

   d.   failing to comply with industry-standard data security measures; and

   e.   failing to timely disclose critical information regarding the nature of the Data Breach.

89.   Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable

26

consequences of the immense damages that would result to Plaintiff and Class Members.

90.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

91.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have and will suffer damages including, but not limited to: (i) the loss of value of their Private Information and loss of opportunity to determine for themselves how their PII is used; (ii) the publication and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Monmouth fails to undertake appropriate and adequate measures to protect it; and (viii) future costs in terms of time, effort and money that will be expended to prevent,

27

detect, contest, and repair the inevitable and continuing consequences of compromised for the rest of their lives.

92. But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

93. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

94. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in

28

Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

95.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

96.    In addition, Monmouth had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

97.    Defendant's violation of federal statutes, including the FTC Act, constitutes negligence *per se*.

98.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

99.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members are therefore entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

100.    Plaintiff re-alleges the factual allegations set forth in paragraphs 1-76 as if fully set forth herein.

101.    In connection with becoming a student and/or employee of Defendant, Plaintiff and Class Members entered into implied contracts with Monmouth.

102.    Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of becoming a student and/or employee.

103.    Defendant required Class Members to provide their Private Information in order to become students and/or employees of Defendant. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

104.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing educational services and/or employment to Plaintiff and Class Members.

105. When Plaintiff and Class Members provided their PII to Monmouth, either directly or indirectly, as a pre-condition of becoming its students and/or employees, they entered into implied contracts with Monmouth.

106. Pursuant to these implied contracts, in exchange for the consideration and PII provided by Plaintiff and Class Members, Defendant agreed to, among other things, and Plaintiff and Class Members understood that Monmouth would: (1) provide educational services and/or employment to Plaintiff and Class Members; (2) implement reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' PII; and (3) protect Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards.

107. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

108. Implicit in the agreement between Plaintiff and Class Members and Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff

31

and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

109. The protection of PII was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand. Indeed, as set forth herein, Defendant recognized its duty to provide adequate data security and ensure the privacy of its current and former students' and/or employees' PII with its practice of providing a privacy policy on its website.

110. Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendant with their PII.

111. Defendant breached its obligations under its implied contracts with Plaintiff and Class Members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain security protocols and procedures to protect Plaintiff's and Class Members' PII in a manner that complies with applicable laws, regulations, and industry standards.

112. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

32

113. On information and belief, at all relevant times, Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

114. On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

115. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

116. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

117. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

118. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and the Class in a timely manner if it was no longer

needed, and by failing to provide accurate notice to them that Private Information was compromised as a result of the Data Breach.

119.    Defendant breached the implied contracts by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members, and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known of, the security vulnerabilities of the systems that were exploited in the Data Breach.

120.    Defendant's breach of its obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breach and the injuries that Plaintiff and Class Members have suffered from the Data Breach.

121.    Plaintiff and Class Members suffered by virtue of Defendant's breach of their implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft - risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and international market; (vi) they have lost time and incurred expenses, and will incur future costs to mitigate and remediate the effects of the Data Breach, including the

increased risks of identity theft they face and will continue to face; and (vii) they have overpaid for the educational services and/or employment they received without adequate data security.

122. As a direct and proximate cause of Defendant's breach of contract, Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiff and the Class)**

123. Plaintiff re-alleges the factual allegations set forth in paragraphs 1-76 as if fully set forth herein.

124. Every contract in the state of New Jersey has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

125. Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

126. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members, and continued acceptance of PII and storage of other personal

information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

127.    Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

128.    Plaintiff re-alleges the factual allegations set forth in paragraphs 1-76 as if fully set forth herein.

129.    This count is plead in the alternative to the breach of implied contract count above.

130.    By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

131.    Plaintiff and Class Members conferred a benefit on Defendant, whereby they provided their Private Information to Defendant in connection with becoming a student and/or employee.

132.    Defendant prior to and at the time Plaintiff and Class Members entrusted it with their PII, caused Plaintiff and Class Members to reasonably believe that it would keep that Private Information secure.

133.   The monies Defendant was paid in its ordinary course of business included a premium for Defendant's cybersecurity obligations and were supposed to be used by Defendant, in part, to pay for the administrative and other costs of providing reasonable data security and protection for Plaintiff's and Class Members' Private Information.

134.   Defendant knew that Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

135.   Defendant failed to disclose facts pertaining to its substandard information systems, or defects and vulnerabilities therein before Plaintiff and Class Members made their decisions to provide Defendant with their Private Information.

136.   Defendant enriched itself by hoarding the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheap, ineffective security measures and diverting those funds to its own personal use. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's

37

decision to prioritize its own profits over the requisite security and the safety of their Private Information.

137. Defendant failed to provide reasonable security, safeguards, and protections to the Private Information of Plaintiff and Class Members, and, as a result, Defendant was overpaid.

138. Under principles of equity and good conscience, Defendant should not be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

139. Plaintiff and Class Members have no adequate remedy at law.

140. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

141. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

**COUNT V**
**<u>DECLARATORY JUDGMENT</u>**
**(On Behalf of Plaintiff and the Class)**

142. Plaintiff re-alleges the factual allegations set forth in paragraphs 1-76 as if fully set forth herein.

143. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

144. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' Private Information and whether Monmouth is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Monmouth's data security measures remain inadequate.

39

Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her PII and remains at imminent risk that further compromises of her PII will occur in the future.

145. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Monmouth owes a legal duty to secure its current and former students' and/or employees' Private Information and to timely notify impacted individuals of a data breach under the common law, and various state statutes; and

    b. Monmouth continues to breach this legal duty by failing to employ reasonable measures to secure Private Information in its possession.

146. This Court also should issue corresponding prospective injunctive relief requiring Monmouth to employ adequate security protocols consistent with law and industry standards to protect Private Information in Monmouth's data network.

147. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Monmouth. The risk of another such breach is real, immediate, and substantial. If another breach at Monmouth occurs, Plaintiff will not have an adequate remedy at law because

many of the resulting injuries are not readily quantified and she will be forced to bring multiple lawsuits to rectify the same conduct.

148. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Monmouth if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Monmouth of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Monmouth has a pre-existing legal obligation to employ such measures.

149. Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Monmouth, thus eliminating the additional injuries that would result to Plaintiff and Class Members whose confidential information would be further compromised.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order certifying this action as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative for the Class, and appointing her counsel to represent the Class;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

41

C.      For equitable relief enjoining Monmouth from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

D.      For equitable relief compelling Monmouth to utilize appropriate methods and policies with respect to data collection, storage, and safety, and to disclose with specificity the types of PII compromised as a result of the Data Breach;

E.      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Monmouth's wrongful conduct;

F.      Ordering Monmouth to pay for not less than ten years of credit monitoring services for Plaintiff and Class Members;

G.      For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

H.      For an award of punitive damages, as allowable by law;

I.      For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

J.      Pre- and post-judgment interest on any amounts awarded; and

K.      Such other and further relief as this court may deem just and proper.

42

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 26, 2026         Respectfully submitted,

**LYNCH CARPENTER, LLP**

*/s/ Gerald D. Wells, III*
Gerald D. Wells, III
(N.J. I.D. No. 040652001)
1760 Market Street
Suite 600
Philadelphia, PA 19103
(267) 609-6910
jerry@lcllp.com

Nicholas A. Colella*
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
nickc@lcllp.com

***Attorneys for Plaintiff and the Proposed Class***
* *Pro hac vice* motion forthcoming

43